[Cite as *Green v. Full Serv. Property Inspections, L.L.C.*, 2013-Ohio-4266.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

CHARLES GREEN, ET AL.

    Appellants

    v.

FULL SERVICE PROPERTY
INSPECTIONS, LLC, et al.

    Appellee

C.A. No.     26712

APPEAL FROM JUDGMENT
ENTERED IN THE
BARBERTON MUNICIPAL COURT
COUNTY OF SUMMIT, OHIO
CASE No.    12 CVF 115

DECISION AND JOURNAL ENTRY

Dated: September 30, 2013

HENSAL, Judge.

{¶1}    Plaintiffs-Appellants, Charles and Elizabeth Green, appeal from a judgment of the Barberton Municipal Court. For the reasons set forth below, this Court affirms.

I.

{¶2}    On August 6, 2010, Mrs. Green entered into a written agreement with Full Service Property Inspections, LLC to perform an inspection of a home located at 10608 Mogadore Ave. NW, Uniontown, Ohio.[1] The Greens had signed an agreement to purchase the property contingent on the results of a home inspection. They chose Full Service to perform the inspection from a list of home inspection companies provided to them by their realtor. The Greens had no prior business dealings with Full Service. The agreement provided that Full Service would notify the Greens of any "major observable deficiencies in the condition of the

---

[1] While Uniontown is located in Stark County, Ohio, the inspection contract provided that all disputes between the parties would be litigated in Summit County, Ohio.

property[,] but will not discover or include latent defects or hidden defects or deficiencies." The agreement provided that the scope of the inspection included the home's insulation and ventilation systems.

{¶3} Full Service provided the Greens with an inspection report that notified them of some potential problems, which the seller of the property remedied. The Greens purchased the property, and moved in September of 2010. In December 2010 or January 2011, they noticed moisture spots on the master bedroom and bathroom ceilings. The Greens allege that the attic has excessive moisture due to improper ventilation as the attic insulation is covering the soffit vents and the siding is covering the gable vents. They maintain that Full Service and its inspector, Scott Julian, should have noticed the problems with the attic insulation and ventilation during the inspection and alerted them accordingly.

{¶4} The Greens filed a complaint on January 12, 2012, in which they allege that Full Service and Mr. Julian breached the inspection contract and violated the Ohio Consumer Sales Practices Act. The Defendants filed a joint motion for summary judgment on all of the Greens' claims, which was granted by the trial court on October 30, 2012. The Greens filed a timely appeal, and raise one assignment of error for our review.

II.

ASSIGNMENT OF ERROR

THE TRIAL COURT ERRED BY GRANTING APPELLEES' MOTION FOR SUMMARY JUDGMENT.

{¶5} The Greens argue that the trial court erred by granting summary judgment in favor of the Defendants on all their claims. This Court disagrees.

{¶6} An appellate court reviews an award of summary judgment de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996). "We apply the same standard as the trial court,

viewing the facts in the case in the light most favorable to the non-moving party and resolving any doubt in favor of the non-moving party." *Garner v. Robart*, 9th Dist. Summit No. 25427, 2011-Ohio-1519, ¶ 8. Pursuant to Civ.R. 56(C), summary judgment is proper if:

> (1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.

*Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327 (1977). The movant must specifically identify the portions of the record that demonstrate an absence of a genuine issue of material fact. *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996). If the movant satisfies this initial burden, the nonmoving party has a reciprocal burden to point to specific facts that show a genuine issue of material fact for trial. *Id.* The nonmoving party must identify some evidence that establishes a genuine issue of material fact, and may not rely upon the allegations and denials in the pleadings. *Sheperd v. City of Akron*, 9th Dist. Summit No. 26266, 2012-Ohio-4695, ¶ 10.

**Breach of Contract**

{¶7} The Greens argue that Full Service and Mr. Julian breached the contract by failing to perform the inspection in a competent and workmanlike manner. "To prove a breach of contract claim[,] [the] plaintiff[s] must demonstrate by a preponderance of the evidence that: (1) a contract existed, (2) the plaintiff[s] fulfilled [their] obligations, (3) the defendant[s] failed to fulfilled [their] obligations, and (4) damages resulted from this failure." *Comstock Homes, Inc. v. Smith Family Trust*, 9th Dist. Summit No. 24627, 2009-Ohio-4864, ¶ 7, quoting *Second Calvary Church of God in Christ v. Chomet*, 9th Dist. Lorain No. 07CA009186, 2008-Ohio-1463, ¶ 9. In its motion for summary judgment, the Appellees argued that there was no evidence that the alleged inadequate ventilation in the attic was a "major observable deficienc[y]."

{¶8}    Mrs. Green testified at her deposition that the attic can be entered through one of three access points.  She described the access door in the upstairs hallway as just big enough to fit an adult-sized male.  Mrs. Green testified that she did not notice the moisture spots on the ceiling until December 2010 or January 2011, which was four or five months after the inspection.

{¶9}    Mr. Green provided an affidavit in response to the Appellees' motion for summary judgment.  He avers that he followed Mr. Julian around as he inspected the property.  According to Mr. Green, Mr. Julian "briefly stuck his head and shoulders up into the attic through the attic access panel and looked around.  Thereafter, [Mr.] Julian came down from the ladder and continued on with his inspection."

{¶10} Mr. Green averred that after he and his wife noticed the moisture spots, they contacted several companies to come to the home to ascertain the cause.  According to Mr. Green, he "learned * * * that the problem was caused by excessive moisture in the attic, caused by a lack of airflow * * *.  The lack of airflow occurred due to the insulation in the attic [that] is covering the soffit vents and the aluminum siding [that] is covering the gable vents * * *."  He avers that this "condition was present during the inspection and should have been noticed during a visual inspection of the attic during the home inspection conducted by Scott Julian."

{¶11} This Court does not conclude that there is a genuine issue of material fact sufficient to preclude summary judgment on the Greens' breach of contract claim.  Through the deposition testimony of Mrs. Green and the inspection contract, the Appellees satisfied their initial burden under *Dresher* to demonstrate the absence of a genuine issue of material fact on the issue of whether the allegedly inadequate attic ventilation was a "major observable deficiency."

*Dresher*, 75 Ohio St.3d at 293. The burden then shifted to the Greens to set forth some evidence in support of their claims. *Id.*

{¶12} The Greens, however, did not set forth competent evidence of the existence of a material fact in dispute. Mr. Green's affidavit is insufficient to show that the allegedly inadequate attic ventilation was a "major observable deficiency." His averment that he "learned" about the alleged cause of the moisture spots is based on hearsay gleaned from discussions with the "3-4 companies [that came] to the house [to] look into the issue" rather than personal knowledge. Further, his averment that the condition, which he alleges to be insulation covering the soffit vents and aluminum siding covering the gable vents, was present at any time before or after the inspection is speculative as he does not allege that he ever entered the attic or observed the conditions therein. Mrs. Green testified that she never went up in the attic, although she believed her husband "peeked" up there. The Greens failed to present an affidavit or testimony from someone who personally observed the alleged ventilation problems, who could testify that the condition was present on the day of the inspection or at the time of viewing by the affiant, and could also testify that Mr. Julian and Full Service should have seen the insulation and siding problems and alerted the Greens accordingly. Since there was no genuine issue of material fact regarding whether the alleged ventilation problem in the attic was in existence and was a "major observable deficienc[y]," the trial court did not err in granting summary judgment to the Appellees on the Greens' breach of contract claim.

## Ohio Consumer Sales Practices Act

{¶13} The Greens argue that the trial court erred in granting the Appellees' motion for summary judgment as the limited liability clause in the inspection contract was both

substantively and procedurally unconscionable, which constituted a violation of the Ohio Consumer Sales Practices Act.

{¶14} "The Consumer Sales Practices Act prohibits unfair or deceptive acts and unconscionable acts or practices by suppliers in consumer transactions." *Einhorn v. Ford Motor Co.*, 48 Ohio St.3d 27, 29 (1990); R.C. 1345.02; R.C. 1345.03. "'[U]nconscionable acts or practices" relate to a supplier manipulating a consumer's understanding of the nature of the transaction at issue.'" *Whitaker v. M.T. Automotive, Inc.*, 111 Ohio St.3d 177, 2006-Ohio-5481, ¶ 10, quoting *Johnson v. Microsoft Corp.*, 106 Ohio St.3d 278, 2005-Ohio-4985, ¶ 24.

{¶15} "'Unconscionability includes both an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party.'" *Crouse v. LaGrange Junction, Ltd.*, 9th Dist. Lorain No. 11CA010065, 2012-Ohio-2972, ¶ 8, quoting *Taylor Bldg. Corp. of Am. v. Benfield*, 117 Ohio St.3d 352, 2008-Ohio-938, ¶ 34. The Greens have the burden of establishing that the agreement is both procedurally and substantively unconscionable. *Id.* Procedural unconscionability pertains to the circumstances present when the parties were bargaining for the terms of the contract, "such as the parties' 'age, education, intelligence, business acumen and experience, who drafted the contract, whether alterations in the printed terms were possible, and whether there were alternative sources of supply for the goods in question.'" *Taylor* at ¶ 44, quoting *Collins v. Click Camera & Video, Inc.,* 86 Ohio App.3d 826, 834 (2d Dist.).

{¶16} Whether a contract is procedurally unconscionable is a question of law that this Court reviews de novo. *Bozich v. Kozusko*, 9th Dist. Lorain No. 09CA009604, 2009-Ohio-6908, ¶7. "A determination of unconscionability is a fact-sensitive question that requires a case-by-

case review of the surrounding circumstances." *Featherstone v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 159 Ohio App.3d 27, 2004-Ohio-5953, ¶ 12 (9th Dist.).

**{¶17}** The inspection contract contained the following provision:

> **It is further understood and agreed that FSPI, LLC <u>its officers and/or employees, assume <u>NO LIABILITY</u> and shall not be responsible for any mistakes, omissions or errors in judgment</u> beyond the <u>COST OF THIS INSPECTION</u>. This limitation of liability shall <u>include and apply to all consequential damage, bodily injury or property damage of any nature.</u>**

(Emphasis sic.) This provision was set off in the agreement as a separate paragraph and included a line for the customer to initial. Mrs. Green testified that she was a 56-year-old disabled veteran with a high school diploma who worked for the U.S. Post Office. The Greens assert that neither of them has expertise in the area of home repairs. Both Mr. and Mrs. Green maintained that they wanted a home inspection because they purchased a previous home without an inspection that they later discovered had problems.

**{¶18}** Mrs. Green does not dispute that she signed the contract and initialed the limited liability provision. The contract was presented to her by the inspector's wife, Mrs. Julian, after the inspection began. It was a pre-printed form contract prepared by Full Service. Mrs. Green admitted that she read the contract, including the limitation of liability clause, before she signed it and that Mrs. Julian did not pressure her to sign the contract. She does not remember if Mrs. Julian reviewed the contract with her or if she asked for clarification on any of the terms. Mrs. Green testified that Mrs. Julian pointed out the parts of the contract that required her initials. Mrs. Green acknowledged that she had "options" other than to use Full Service. She also admitted that she could have declined to accept the contract if she did not agree with a term.

**{¶19}** There was a deadline to have the home inspected pursuant to the purchase agreement. If the Greens did not have the inspection performed in that "short amount of time,"

they would have lost their opportunity to have the seller correct any structural issues with the home. The time constraint was not, however, of the Appellees' making, but rather was a result of the Greens' contract with the property's seller.

{¶20} Furthermore, in their opposition to the Appellees' motion for summary judgment, the Greens attached a copy of their purported purchase agreement to demonstrate that they only had ten days in which to have the inspection completed and to report any problems to the seller. However, the purchase agreement was not proper evidence for the trial court to consider. Under Civil Rule 56(C), the trial court is restricted to reviewing "the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact" when deciding if summary judgment is appropriate. While Mr. Green's affidavit references the purchase agreement, it neither was "attached to or served with the affidavit" nor "[s]worn [to] or certified." Civ.R. 56(E); *Trubiani v. Graziani*, 9th Dist. Medina No. 2629-M, 1998 WL 46795, *2 (Jan. 21, 1998) ("The proper procedure for introducing evidentiary matter not specifically authorized by Rule 56(C) is to incorporate it by reference in a properly framed affidavit pursuant to Rule 56(E).")

{¶21} This Court does not conclude that the transaction between the parties was procedurally unconscionable. While the evidence shows that Full Service prepared and presented this contract to Mrs. Green, there is no evidence that she was deprived of an opportunity to negotiate more favorable terms, including the exclusion of the limited liability provision. Likewise, there is no evidence that Mrs. Green was rushed through her review of the contract or prevented from asking questions about its terms. Mrs. Green testified that she was so excited about the purchase of the home that she would have signed the contract even if it contained a term she did not understand. Because the Greens have failed to demonstrate that

there is a genuine issue of material fact regarding whether the subject transaction was procedurally unconscionable, this Court need not consider whether the provision was substantively unconscionable. *Crouse*, 2012-Ohio-2972 at ¶ 17. Based on the totality of the circumstances, this Court also does not conclude that Full Service "manipulat[ed] [the Greens'] understanding of the nature of the transaction at issue" such that it violated the Ohio Consumer Sales Practices Act. *Whitaker*, 2006-Ohio-5481 at ¶ 10.

**{¶22}** Based upon the foregoing, there is no genuine issue of material fact regarding the Greens' Ohio Consumer Sales Practices Act claim. The Greens' assignment of error is overruled.

### III.

**{¶23}** The Greens' assignment of error is overruled. The judgment of the Barberton Municipal Court is affirmed.

Judgment affirmed.

––––––

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Barberton Municipal Court, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is

instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellants.

JENNIFER HENSAL
FOR THE COURT

WHITMORE, J.
CONCURS.

CARR, P. J.
DISSENTING.

{¶24} I respectfully dissent. I would conclude that the trial court erred by granting summary judgment in favor of Full Service and Mr. Julian because the Greens presented some evidence in support of their claims for breach of contract and a violation of the Ohio Consumer Sales Practices Act.

{¶25} The majority affirms the trial court's judgment after discounting as improperly submitted evidence by the Greens that tended to support both claims. While I agree that an affidavit not based on personal knowledge, including assertions gleaned from hearsay, and any document not properly incorporated by reference within an affidavit are not properly submitted evidence for purposes of summary judgment review, this Court has recognized the trial court's proper consideration of such evidence, in its discretion, where the opposing party has not objected to the evidence. *See, e.g., King v. Rubber City Arches, L.L.C.*, 9th Dist. Summit No. 25498, 2011-Ohio-2240, ¶ 26; *Wallner v. Thorne*, 9th Dist. Medina No. 09CA0053-M, 2010-

Ohio-2146, ¶ 18 ("The trial court retains discretion to either consider or ignore improper Civ.R. 56 evidence, * * * when there has not been any objection to the evidence.")

{¶26} In this case, neither Full Service nor Mr. Julian objected to the Greens' submission of Mr. Green's affidavit or a copy of their purchase agreement. The trial court wrote in its judgment entry that it considered all the evidence, including the pleadings, affidavits, and all other evidence, submitted with the motion for summary judgment and brief in opposition. As the trial court, in its discretion, considered the improperly submitted evidence in the absence of any objection by the defendants, I do not believe that this Court is free to discount it. To do so would constitute a consideration of the motion for summary judgment in the first instance, rather than reviewing de novo the trial court's determination based on the evidence before it.

{¶27} Upon consideration of Mr. Green's affidavit and the Greens' purchase agreement, I would conclude that the Greens met their reciprocal burden of identifying some evidence establishing the existence of a genuine issue of material fact as to each claim. Accordingly, I would reverse the trial court's award of summary judgment and remand the matter for further proceedings.

APPEARANCES:

DARREN W. DEHAVEN, Attorney at Law, for Appellants.

ADAM J. DAVIS, Attorney at Law, for Appellee.